**YEN PILCH ROBAINA & KRESIN PLC**
6017 N. 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Ty D. Frankel (027179)
TDF@yprklaw.com

**YEN PILCH ROBAINA & KRESIN PLC**
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
Telephone: (619) 756-7748
Patricia N. Syverson (020191)
PNS@yprklaw.com

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Deion Anthony, on behalf of himself and all those similarly situated,<br><br>             Plaintiff,<br>v.<br><br>Rise Services Inc. dba Rise Inc., an Arizona corporation; and Rise Services Inc., a Utah corporation,<br><br>             Defendants. | Case No.<br><br>**COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**<br><br>**[Jury Trial Demanded]** |

Plaintiff Deion Anthony ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against Defendant Rise Services Inc. dba Rise Inc., an Arizona corporation, and Defendant Rise Services Inc., a Utah corporation (both entities collectively referred to as "Rise Services" or "Defendant") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, Arizona wage laws, A.R.S. § 23-350, *et seq.* ("Arizona Wage Statute"), A.R.S. 23-363 *et seq.* ("Arizona Minimum Wage Statute"), and the Arizona Employment Protection Act, A.R.S. § 23-1501.

**NATURE OF THE ACTION**

1.      Plaintiff alleges on behalf of himself and all other similarly situated Direct Support Professionals of Defendant who elect to opt in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Action Members") that they are entitled to unpaid wages including unpaid minimum wage and overtime for all hours worked exceeding forty (40) in a workweek, liquidated damages, and attorneys' fees and costs, pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq*., specifically 29 U.S.C. §§ 206, 207, 216(b).

2.      Plaintiff further alleges, pursuant to Fed. R. Civ. P. 23, on behalf of himself and a class of other similarly situated Direct Support Professionals employed by Defendant within the State of Arizona (the "Arizona Class Members"), that they are entitled to timely payment of all wages due, plus interest, treble damages, and penalties as allowed by the Arizona Wage Statute, A.R.S. § 23-350, *et seq*., and that they are entitled to payment of the minimum wage, plus interest, statutory damages, and penalties as allowed by the Arizona Minimum Wage Statute, A.R.S. § 23-362, *et seq.*

3.      Plaintiff further alleges, on his own behalf, pursuant to the FLSA, 29 U.S.C. §§ 215(a)(3) and 216(b), that he is entitled to reinstatement, lost wages, and damages, including liquidated damages, fees, and costs for Defendant's unlawful retaliation against him resulting from his complaints relating to unpaid overtime and minimum wage and his statement that he would have the unpaid wage issues he complained about to management resolved by the Department of Labor.

4.      Plaintiff further alleges, on his own behalf, pursuant to the Arizona Minimum Wage Statute, A.R.S. § 23-364, that he is entitled to damages in an amount not less than one hundred fifty dollars ($150) for each day that the violation continued or until judgment is final for Defendant's unlawful retaliation against him resulting from his complaints relating to unpaid minimum wage and his statement that he would have the unpaid wages issues he complained about to management resolved by the Department of Labor.

5.      Plaintiff further alleges, on his own behalf, pursuant to A.R.S. § 23-1501 of the Arizona Employment Protection Act, that he is entitled to damages for past and future

wage and benefit losses, economic disadvantages, mental pain, anguish, and suffering caused by Defendant's termination of Plaintiff in retaliation for raising violations of the Arizona Wage Statute, A.R.S. § 23-350, and public policy of this State arising from Defendant's failure to timely pay all wages due.

## JURISDICTION AND VENUE

6.      The FLSA authorizes civil actions by private parties to recover damages for violations of the FLSA's wage and hour provisions.   This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same case and controversy as the FLSA claim. The state and federal claims derive from a common nucleus of operative fact, the state law claims will not substantially dominate over the FLSA claims, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because substantial decisions and events giving rise to the claims occurred in the State of Arizona within this District.

9.      The United States District Court for the District of Arizona has personal jurisdiction because Defendant conducts business within this District and the actions giving rise to this Complaint occurred in this District.

10.      At all relevant times, Defendant has been an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

11.      Plaintiff and the other similarly situated Direct Support Professionals are employees as defined in 29 U.S.C. § 203(e)(1), A.R.S. § 23-362(A), and A.R.S. § 23-350(2) and are non-exempt employees under 29 U.S.C. § 213(a)(1).

12.     At all relevant times, Defendant was an employer as defined by 29 U.S.C. § 203(d), A.R.S. § 23-362(B), and A.R.S. § 23-350(3) and a "person" under 29 U.S.C. § 213(a)(1).

13.     At all relevant times, Defendant employed Direct Support Professionals to provide caregiving services to individuals with disabilities in Arizona, including Plaintiff Deion Anthony and those persons similarly situated to Plaintiff who are members of the putative collective action and class action classes (collectively referred to as "Direct Support Professionals").

14.     At all relevant times, Plaintiff and the other members of the putative classes were engaged in commerce and/or worked for Defendant in an enterprise engaged in commerce.

15.     At all relevant times, Defendant has been engaged in interstate commerce and has been an enterprise whose gross annual volume of sales made or business done is greater than $500,000.

**PARTIES**

16.     Defendant Rise Services Inc. dba Rise Inc. is an Arizona corporation with its headquarters and principal place of business located at 4554 E. Inverness Avenue, Mesa, Arizona 85206.

17.     Defendant Rise Services Inc. is a Utah Corporation with its headquarters and principal place of business located at 1358 W. Business Park Drive, Orem, Utah 84058.

18.     Defendant Rise Services, Inc. dba Rise Inc., the Arizona corporation, and Defendant Rise Services, Inc., the Utah corporation, exercise their authority to control the day-to-day operations of the business where Plaintiff and the Direct Support Professionals work, including matters related to setting and paying compensation to the Direct Support Professionals, such that they are liable to Plaintiff and the Direct Support Professionals as an employer.

19.     Rise Services was founded in 1987 and provides caregiving services for children, adults, and families throughout Arizona, as well as other states including Utah, Oregon, Texas, and Idaho.

20.     Through its Direct Support Professionals like Plaintiff, Rise Services provides services for people with disabilities including providing caregiving in residential settings and day programs and providing employment assistance, management care, and hourly supports.

21.     Plaintiff Anthony was, at all relevant times, an individual residing in the Phoenix, Arizona metropolitan area.

22.     At all relevant times, Plaintiff Anthony was employed by Rise Services in Arizona as a Direct Support Professional, an hourly, non-exempt position.   Plaintiff Anthony's Consent to be a Named Plaintiff and Opt-In to Lawsuit pursuant to 29 U.S.C. § 216(b) is attached hereto as **Exhibit 1**.

## STATEMENT OF FACTS

23.     Defendant Rise Services is an "employer" within the meaning of the FLSA, the Arizona Minimum Wage Statute, and the Arizona Wage Statute.

24.     Defendant operates numerous caregiving facilities throughout Arizona, hiring Direct Support Professionals like Plaintiff to provide caregiving services at numerous locations throughout the State of Arizona including Chinle, Kingman, Lake Havasu City, Mesa, Queen Creek, Sierra Vista, Surprise, Tucson, and Yuma.

25.     Plaintiff was employed by Rise Services as a Direct Support Professional from September 2, 2021 until January 23, 2022.  He worked for Defendant at its caregiving facility in the Phoenix metropolitan area.

26.     During his typical week, Plaintiff was scheduled to work Monday through Friday from 2pm until 11pm.

27.     However, due to the nature of his work and additional staffing needs from Rise Services, Plaintiff was often scheduled to work on Saturdays and Sundays from 9am until 11pm in addition to his regularly scheduled shift from Monday through Friday.

28.     Defendant failed to pay Plaintiff all the wages he was due for the hours he worked, including regular wages, minimum wage, and overtime wages.

**I.      Rise Services Was Obligated To Pay Plaintiff And The Direct Support Professionals Certain Compensation For Their Work Performed**

29.     Plaintiff was employed as a non-exempt Direct Support Professional and was paid an hourly rate during his employment.  Plaintiff's hourly pay rate during his employment ranged from $12.25 per hour to $13.50 per hour.  During his most recent pay periods, he was paid an hourly rate of $13.50 per hour, but he was promised a raise to $14.75, which was to take effect February 1, 2022.

30.     In addition to his regular hourly rates, Plaintiff was supposed to be compensated for hazard pay when an individual he was providing caregiving services for tested positive for COVID-19 at a hazard pay rate of $20.25 per hour.

31.     Plaintiff was also supposed to be paid a holiday rate of time and a half his regular rate of pay when he worked on a holiday.  For example, when he worked a holiday during the time period in which he was paid a regular hourly rate of $13.50, he was to be paid $20.25 per hour for work performed on holidays.

32.     Plaintiff also had a reasonable expectation to receive a non-discretionary bonus, which Defendant had a policy and practice of paying other Direct Support Professionals.

33.     Defendant also required Direct Support Professionals to complete mandatory training.  For Plaintiff and other similarly situated Direct Support Professionals, the required training was integral and indispensable to their jobs as Direct Support Professionals and required by Defendant.  The Direct Support Professionals like Plaintiff were required to complete computer training modules regarding the essential functions of their jobs, including training about safety practices associated with their work as caregivers.

34.     Defendant promised to pay the Direct Support Professionals for time spent training.  In fact, Rise Services advertises for Direct Support Professionals in Arizona and states in the job advertisement that the employees are "paid for training."  Management also

promised Plaintiff and the Direct Support Professionals that they would be paid for training during the course of their employment, including in communications made to the Direct Support Professionals during their employment.

**II.** **Rise Services Routinely And Consistently Failed To Pay The Direct Support Professionals Like Plaintiff All The Compensation They Were Due**

  ***A.***  ***Unpaid Hazard Pay***

  35.  Plaintiff and the Direct Support Professionals were promised hazard pay at a rate of $20.25 when they had to work with a patient who tested positive for COVID-19.

  36.  However, Rise Services routinely and consistently failed to pay the Direct Support Professionals like Plaintiff the hazard pay they were due.

  37.  For example, from January 1, 2022 until January 10, 2022, Plaintiff worked 190.53 hours with patients who had tested positive for COVID-19 and was therefore due hazard pay at a rate of $20.25 per hour for those hours.

  38.  Plaintiff received his paycheck on January 21, 2022 for the period of January 1, 2022 until January 15, 2022, which includes the period in which he was due hazard pay.

  39.  During that pay period, Plaintiff was paid $13.50 per hour for 80 hours of regular time, $20.25 for 40.90 hours of overtime, and $20.25 for 13.10 hours of holiday time.

  40.  Rise Services failed to pay Plaintiff for any hazard pay he had earned from working 190.53 hours with individuals who had tested positive for COVID-19.

  41.  Plaintiff raised the issue of Rise Services' failure to pay him the hazard pay he was due, which resulted in the Company paying him hazard pay for 140.53 hours five days late on January 26, 2022.

  42.  Critically, Rise Services failed to pay Plaintiff hazard pay for numerous hours he worked, including 50 hours during the pay period from January 1, 2022 until January 15, 2022.

**B.** **Unpaid Training Pay**

43.    The Direct Support Professionals like Plaintiff were routinely told that they must complete the mandatory training, and if they failed to do so, Rise Services communicated that they would withhold their pay or terminate their employment.

44.    As a result, Plaintiff and the Direct Support Professionals routinely completed hours of training per week to comply with Defendant's training requirements, but Defendant failed to pay them for this time.

45.    For example, Plaintiff completed at least six hours of training off the clock during the typical week, but Rise Services never paid Plaintiff for the time he worked completing the mandatory training modules.

46.    Plaintiff and the Direct Support Professionals completed the mandatory training at home using their personal internet devices.

47.    They could not complete their training during their regularly scheduled shifts, because that would take away from the caregiving services they were required to provide Rise Services' clients in a safe and attentive manner.

48.    The unpaid training time that Defendant required Plaintiff and other similarly situated Direct Support Professionals to work off the clock routinely caused Plaintiff and other similarly situated Direct Support Professionals not to be paid all the wages they were due.

**C.** **Unpaid Bonuses**

49.    Plaintiff learned that Direct Support Professionals receive non-discretionary bonuses as part of their regular compensation.

50.    The bonuses were paid in addition to the hazard pay the Direct Support Professionals were supposed to receive.

51.    They were designated as a "bonus" on the Direct Support Professionals' Earnings Statements.

52.    Plaintiff learned from management and another Direct Support Professional that a bonus had been paid out.

53.    Plaintiff had a reasonable expectation to receive all the bonuses he was due for his work providing care just as the other Direct Support Professional had.

54.    However, Plaintiff only received one bonus of $65.18 for the pay period of October 16, 2021 until October 31, 2021 designated on his pay statement as a "COVID BONUS."

55.    Plaintiff was never paid any other bonuses that other Direct Support Professionals were paid and Plaintiff had also earned.

**D.    *Unpaid Minimum Wage***

56.    Employees like Plaintiff and the Direct Support Professionals in Arizona must be paid the minimum wage, which in 2019 was $11 per hour, in 2020 was $12 per hour, in 2021 was $12.80 per hour, and in 2022 is $12.80 per hour.

57.    Rise Services had a policy and practice of routinely requiring Direct Support Professionals like Plaintiff to work off the clock.

58.    Direct Support Professionals like Plaintiff are routinely required to work at least 6 hours off the clock per week completing mandatory training.

59.    When accounting for the hours Plaintiff and the Direct Support Professionals are actually required to work, including the time they are required to work off the clock completing training, Plaintiff and the Direct Support Professionals' wages routinely fall below the minimum wage.

60.    For example, Plaintiff's pay statement for the period of October 1, 2021 through October 15, 2021 indicates that he worked 76.02 hours and was paid gross wages in the amount of $1,024.06.  However, Plaintiff's hours do not account for work performed off the clock, including the 6 hours of training he worked during the typical week.  Taking into account the amount of time Plaintiff actually worked this week including the 6 hours of training, Plaintiff worked 88.02 hours for $1,024.06 and was therefore paid $11.63 per hour, which is below the minimum wage.

61.    Similarly, Plaintiff's pay statement for the period of December 1, 2021 until December 15, 2021 indicates that he worked 73.77 hours and was paid a gross amount of

1   $951.94.   However, Plaintiff's hours do not account for work performed off the clock,

2   including the 6 hours of training he worked during the typical week.   Taking into account

3   the amount of time Plaintiff actually worked this week including the 6 hours of training,

4   Plaintiff worked 85.77 hours for $951.94 and was therefore paid $11.09 per hour, which is

5   below the minimum wage.

6        62.   These examples of Plaintiff's wages falling below the minimum wage are

7   indicative of how he and the Direct Support Professionals were paid wages less than what

8   is required by law.

9        E.   *Unpaid Compensation including Overtime and Incorrect Overtime Rate*

10            *Calculation*

11       63.   Plaintiff and the Direct Support Professionals routinely worked overtime by

12   working more than 40 hours per week, but Rise Services failed to pay them all the overtime

13   hours they earned and were due.

14       64.   Plaintiff and the Direct Support Professionals were also routinely denied

15   wages due under the Arizona Wage Statute.

16       65.   For example, Plaintiff and the Direct Support Professionals routinely worked

17   unpaid hours of mandatory training for which they should have been compensated, and

18   which many times caused Plaintiff and the Direct Support Professionals to work unpaid

19   time including hours over 40 hours in a week resulting in numerous hours of unpaid

20   overtime.

21       66.   As hourly, non-exempt employees, Plaintiff and other similarly situated

22   Direct Support Professionals were promised an hourly rate by Defendant for all hours

23   worked in each workweek, and those wages were timely due to Plaintiff and other similarly

24   situated Direct Support Professionals pursuant to the Arizona Wage Statute.

25       67.   In addition, when Defendant did pay overtime, Defendant calculated their

26   overtime rate based on their regular hourly rate without accounting for their other

27   compensation like hazard pay, holiday pay premiums, and non-discretionary bonuses.

28

68.   By failing to take into account their total compensation in calculating Plaintiff's and the Direct Support Professionals' overtime rate, including hazard pay, holiday pay, and non-discretionary bonuses, Defendant violated the FLSA.

69.   As hourly, non-exempt employees, Plaintiff and the other similarly situated Direct Support Professionals are or were entitled to overtime premiums for hours worked in excess of forty (40) each workweek.  Their overtime rate must be based on their regular rate of pay, which must include their total compensation of their regular hourly rate, hazard pay, holiday pay premium, and non-discretionary bonuses.

70.   For example, Plaintiff's pay statement for the period of January 1, 2022 until January 15, 2022 indicates that he worked 80 hours of regular time, 40.90 hours of overtime, and 13.10 hours of holiday time.  Plaintiff was paid his regular hourly rate of $13.50 for his regular time and time and a half that regular hourly rate for overtime that was a paid at a rate of $20.25 per hour.  However, Plaintiff also worked 13.10 hours of holiday time at a pay rate of $20.25 for a total of $265.28, which was not factored into his regular rate of pay resulting in the incorrect overtime rate.

71.   In addition, from January 1, 2022 until January 10, 2022, Plaintiff worked 190.53 hours for which he should have been paid hazard pay in the amount of $20.25 per hour.  Defendant failed to pay him all the hazard pay he was due and failed to account for the hazard pay earned into his overtime rate for that pay period.

72.   Defendant's failure to pay the proper overtime rate or for all the overtime hours worked was not an isolated practice.

73.   For example, from December 1, 2021 until December 15, 2021, Plaintiff's pay statement indicates that his regular rate was $12.80 per hour and he worked 1.2 hours of overtime during that pay period.  However, the number of hours of overtime worked fails to account for the 6 hours of unpaid training time Plaintiff worked during the typical week, causing him not to be paid all the overtime hours he worked.

74.   In addition, Plaintiff's pay statements indicate that he was only paid overtime at time and a half his hourly rate.  Rise Services never properly accounted for his total

compensation, which includes hazard pay, holiday pay premiums, and non-discretionary bonuses as required by the FLSA.

75.     Defendant's policy and practice requiring Plaintiff and other similarly situated Direct Support Professionals to work off the clock, including training time, denied them both straight time, minimum wage, and overtime pay.

76.     The pay periods identified in this Complaint are indicative of how Plaintiff was typically paid in a manner that caused him not to receive minimum wage, overtime and regular wages he earned and was due under the FLSA, the Arizona Minimum Wage Statute, and the Arizona Wage Statute.

77.     Defendant failed to timely pay Plaintiff for all the wages he was due for work he performed, including regular wages, minimum wage, and overtime.

78.     In addition, when Plaintiff was paid overtime, Defendant failed to pay the correct overtime rate by factoring in his total compensation including hazard pay, holiday pay premiums, and non-discretionary bonuses.

79.     A significant part, if not all, of this unpaid straight time, minimum wage, and overtime work is evidenced in Defendant's own payroll, time-recording, and attendance records, most of which are exclusively in Defendant's own possession.

**III.     Rise Services' Compensation Policies And Practices Are Willful And Result In Violations Of The FLSA, The Arizona Minimum Wage Statute, And The Arizona Wage Statute**

80.     Defendant's policy and practice is to willfully deny its hourly, non-exempt Direct Support Professionals pay for all hours worked, including regular hours, minimum wage, and overtime worked beyond forty (40) in a workweek.

81.     Upon information and belief, Defendant applied and instituted the above-described willful and illegal policies and practices regarding not paying for all hours worked, failing to account for total compensation in the overtime rate, and failing to pay all wages due including the overtime and minimum wage, at all of Defendant's sites in Arizona.

82.     As a result of its policies, Defendant fails to pay straight time wages, minimum wage, and overtime to save payroll costs and taxes. Defendant enjoys ill-gained profits at the expense of Plaintiff and other similarly situated Direct Support Professionals.

83.     In fact, an employee of Rise Services filed a complaint with the Arizona Industrial Commission Department of Labor in December 2021, complaining that Rise Services had irregular pay periods and paid employees late in violation of the Arizona Wage Statute.

84.     Despite that complaint, Rise Services recklessly disregarded the law and continued to pay its Direct Support Professionals the wages they had earned late and continued to reduce their wages below the amounts they were entitled to.

85.     During his employment, Plaintiff spoke with other Direct Support Professionals who worked at various locations in Arizona about Defendant's unlawful pay policies, learning that they also were subject to the same unlawful pay practices that he was experiencing.

86.     In January 2022, Plaintiff complained to management about Rise Services unlawful pay practices, including its failure to pay wages due resulting in unpaid wages, minimum wage, and overtime.

87.     As part of those complaints, Plaintiff told management that he would pursue his unpaid wages with the Department of Labor if Rise Services continued to unlawfully withhold his wages.

**IV.     Rise Services Retaliated Against Plaintiff For His Complaints Regarding Rise Services' Compensation Policies And Practices**

88.     On January 21, 2022, the same day he was supposed to receive a significant amount of hazard pay, Plaintiff became even more direct in his complaints about unpaid wages.  He complained to his supervisor that his check was shorted numerous hours of hazard pay, which resulted in unpaid wages under the Arizona Wage Statute and unpaid wages under the FLSA.

89.     Plaintiff also informed management that wage theft was illegal, that he should be paid all the wages he was due, and that he would go to the Department of Labor if Rise Services failed to pay him for all his wages.

90.     On that same day that Plaintiff complained about the unpaid wages to his supervisor, for the first time management took issue with his job performance.

91.     Other management personnel became concerned that Plaintiff would quit his job because of the complaints about his job performance on January 21, 2022.  In an effort to deter Plaintiff from quitting, management contacted Plaintiff on January 22, 2022 and said that he would be receiving a raise to $14.75 effective February 1, 2022.

92.     However, other supervisors in management at Rise Services were still upset that Plaintiff complained about unpaid wages, including compensation policies and practices that led to violations of the FLSA, the Arizona Wage Statute, and Arizona Minimum Wage Statute.

93.     In retaliation for and as a direct and proximate result of Plaintiff's complaints relating to unpaid wages, minimum wage, and overtime and Defendant's failure to comply with the law and policy of the Arizona Wage Statute, Defendant terminated Plaintiff's employment at Rise Services on January 23, 2022.

94.     Despite complaints about Defendant's wage violations, Defendant did not investigate the allegations and did not modify its unlawful pay practices, which Defendant willfully continues.

95.     Defendant's adverse employment action against Plaintiff was unlawful retaliation for Plaintiff's complaints about Defendant's unlawful wage practices resulting in unpaid minimum wage and overtime and violations of Arizona law and public policy arising from the obligation to timely pay wages due under the Arizona Wage Statute.

96.     Defendant's adverse employment actions were malicious and punitive in nature and caused Plaintiff both economic and non-economic damages, including lost wages, emotional distress, embarrassment, and other damages.

1

**COLLECTIVE ACTION ALLEGATIONS**

2   97.   Plaintiff Anthony brings Count I and II, the FLSA unpaid overtime and

3   minimum wage claims, pursuant to 29 U.S.C. § 216(b) on behalf of himself and the

4   following similarly situated employees of Defendant:

5       All Direct Support Professionals who worked for Rise Services Inc. dba Rise Inc. in

6       Arizona during the last three years ("Collective Action Members").

7   98.   Plaintiff, on behalf of himself and all other similarly situated Direct Support

8   Professionals, seeks relief on a collective basis challenging Defendant's practice of failing

9   to accurately record work time and pay its employees for all hours worked, including

10  overtime, at the proper overtime rate and failing to pay them the minimum wage for all

11  hours worked.  The number and identity of other individuals yet to opt-in and consent to

12  join the collective action may be determined from Defendant's records and potential

13  Collective Action Members may easily and quickly be notified of the pendency of this

14  action.

15  99.   Plaintiff is similarly situated to the Collective Action Members because they

16  are all subject to similar payroll policies and procedures.  Defendant requires the similarly

17  situated Collective Action Members to work overtime but fails to pay them for all hours

18  worked, including overtime resulting from unpaid training time.  Defendant also fails to

19  pay the similarly situated Collective Action Members the proper overtime rate, because their

20  regular rate of pay fails to account for their total compensation including hazard pay, non-

21  discretionary bonuses, and holiday pay.  Defendant also fails to pay the Collective Action

22  Members the minimum wage for all hours worked.  The Collective Action Members are also

23  similarly situated because they all utilize Defendant's time recording and reporting

24  practices, which fail to accurately account and pay for all time worked including overtime

25  and fails to account for overtime at the legally required rate.

26  100.   Defendant's overtime and minimum wage practices were routine and

27  consistent. Throughout the relevant time period over the past three years, the Collective

28

Action Members regularly were not paid the proper minimum wage and overtime despite working in excess of forty hours per week.

101.   Plaintiff and the Collective Action Members performed the same or similar job duties. Moreover, they regularly worked more than forty hours in a workweek. Accordingly, the employees victimized by Defendant's unlawful pattern and practices are similarly situated to Plaintiff in terms of employment and pay provisions.

102.   Defendant's failure to pay overtime and minimum wage compensation at the rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of the members of the collective action. Thus, Plaintiff's experience is typical of the experience of the others employed by Defendant.

103.   The Collective Action Members, including Plaintiff, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40) and the minimum wage. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts pertaining to liability.

104.   Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel experienced and competent in the practice of wage and hour law and class action litigation.  Plaintiff has no interest that is contrary to or in conflict with the putative members of this collective action.

## CLASS ACTION ALLEGATIONS

105.   Plaintiff brings Count III and Count IV, the Arizona Minimum Wage Statute and Arizona Wage Statute claims, as a Rule 23 class action on behalf of himself and the following persons:

All Direct Support Professionals who worked for Rise Services Inc. dba Rise

Inc. in Arizona from February 18, 2019 to the present ("Arizona Class

Members").

106.    Plaintiff's Rule 23 class claims (Count III and Count IV) satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

107.    Plaintiff's Rule 23 state law class claim (Count III and Count IV) satisfies the numerosity requirement of a class action.  The Arizona Class Members identified above are so numerous that joinder of all members is impracticable.  Although the precise number of potential class members is unknown, and the facts for calculating that number are presently within the sole control of Defendant, upon information and belief, there are hundreds of Arizona Class Members.

108.    Questions of law and fact common to the Arizona Class Members predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all Arizona Class Members.  Among the questions of law and fact common to Plaintiff and the Arizona Class Members are:

a.    whether Defendant employed the Arizona Class Members within the meaning of the Arizona Minimum Wage Statute and the Arizona Wage Statute;

b.    whether Defendant owes the Arizona Class Members wages in exchange for all work performed, including training time, hazard pay, bonuses, overtime, and holiday pay;

c.    whether Defendant unlawfully failed to timely pay Arizona Class Members wages for all hours worked, including training time, hazard pay, bonuses, and overtime;

d.    whether Defendant is liable for damages under the Arizona Wage Statute, including but not limited to compensatory damages, interest, and treble damages;

e.    whether Defendant unlawfully failed to pay Arizona Class Members the minimum wage;

f.    whether Defendant is liable for damages under the Arizona Minimum Wage Statute.

109.    Plaintiff's claims under Arizona state law are typical of those of the Arizona Class Members' in that class members have been employed in the same or similar positions as Plaintiff and were subject to the same or similar unlawful payroll practices as Plaintiff.

110.    The common questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

111.    A class action is appropriate for the fair and efficient adjudication of this controversy.  Defendant acted or refused to act on grounds generally applicable to the entire class.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of the class members to protect their interests.  The damages suffered by individual class members may be relatively small, and the expense and burden of individual litigation make it virtually impossible for the members of the class action to individually seek redress for the wrongs done to them.

112.    Plaintiff will fairly and adequately represent the interests of the Arizona Class Members and has retained counsel that is experienced and competent in the fields of wage and hour law and class action litigation.  Plaintiff has no interest that is contrary to or in conflict with those members of this class and collective action.

**COUNT I**
**COLLECTIVE ACTION FOR VIOLATION OF THE**
**FAIR LABOR STANDARDS ACT**
**(Failure to Properly Pay Overtime Wages and Record Keeping Violations - FLSA -**
**29 U.S.C. § 207 *et seq.*; Brought Against Defendant by Plaintiff Anthony Individually**
**and on Behalf of the Collective Action Members)**

113.    Plaintiff, on behalf of himself and all Collective Action Members, reasserts the allegations set forth in the above paragraphs.

114.    Defendant paid Plaintiff and the Collective Action Members on an hourly basis, and they were and are all entitled to the overtime protections of the Fair Labor Standards Act as set forth in 29 U.S.C. §§ 201, *et seq.*

115.    At all relevant times, Defendant has been, and continues to be, subject to the minimum wage and overtime provisions of the FLSA because its employees are engaged in commerce and Defendant has annual revenues in excess of $500,000.

116.    Plaintiff and the Collective Action Members are non-exempt employees entitled to the statutorily mandated overtime pay according to the FLSA.

117.    Defendant was an employer pursuant to 29 U.S.C. § 203(d).

118.    Defendant failed to comply with 29 U.S.C. § 207 because Plaintiff and the Collective Action Members worked for Defendant in excess of forty hours per week, but Defendant failed to pay them for those excess hours at the statutorily required rate of one and one-half times their regular rate of pay as required by the FLSA.

119.    Plaintiff and other similarly situated Direct Support Professionals performed work causing them to work in excess of forty (40) hours in certain workweeks.

120.    This work was performed at Defendant's direction and/or with Defendant's knowledge.

121.    Defendant willfully violated the FLSA by failing to pay Plaintiff and the other Collective Action Members all wages due including overtime premiums for all hours accrued beyond forty (40) in a workweek.

122.    Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions complied with the FLSA.

123.    At all relevant times, Defendant willfully, regularly, and repeatedly failed, and continues to fail to make, keep, and preserve accurate time records required by the FLSA with respect to Plaintiff and the other similarly situated Direct Support Professionals, including records determining the wages and hours of employment pertaining to Plaintiff and the similarly situated Direct Support Professionals.

124.    As a result of the willful violations of the FLSA's overtime pay provisions, Defendant has unlawfully withheld overtime wages from Plaintiff and Collective Action Members.  Accordingly, Defendant is liable to Plaintiff and the Collective Action Members for unpaid wages including overtime compensation, an additional equal amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant, and pray this Court:

a.    Certify the claim set forth in Count I above as a collective action pursuant to Section 216(b) of the FLSA and issue notice to all similarly-situated hourly, non-exempt Direct Support Professionals, who worked for Defendant during the last three years in Arizona, informing them of their right to file consents to join the FLSA portion of this action;

b.    Designate Plaintiff Anthony as the Representative Plaintiff of the Collective Action and undersigned counsel as the attorneys representing the Collective Action Members;

c.    Award Plaintiff and all similarly situated employees compensatory and liquidated damages under 29 U.S.C. § 216(b);

d.    Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law;

e.    Award Plaintiff and all similarly situated employees attorneys' fees and costs as allowed by Section 216(b) of the FLSA, including that Defendant is financially responsible for notifying the Collective Action Members of Defendant's alleged wage and hour violations; and

f.    Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

## COUNT II
## COLLECTIVE ACTION FOR VIOLATION OF THE
## FAIR LABOR STANDARDS ACT
**(Failure to Properly Pay Minimum Wage and Record Keeping Violation – FLSA – 29 U.S.C. § 206 *et seq.*; Brought Against Defendant by Plaintiff Anthony Individually and on Behalf of the Collective Action Members)**

125.    Plaintiff, on behalf of himself and the Collective Action Members, reasserts the allegations set forth in the above paragraphs.

126.    Defendant paid Plaintiff and the Collective Action Members on an hourly basis, and they are and were all entitled to the minimum wage protections of the FLSA as set forth in 29 U.S.C. §§ 201, *et seq*.

127.    At all relevant times, Defendant has been, and continues to be, subject to the minimum wage and overtime provisions of the FLSA because its employees are engaged in interstate commerce and Defendant has annual revenues in excess of $500,000.

128.    Plaintiff and the Collective Action Members are non-exempt employees entitled to the statutorily mandated minimum wage.

129.    Defendant was an employer pursuant to 29 U.S.C. § 203(d).

130.    Defendant failed to comply with 29 U.S.C. § 206 because Defendant failed to pay Collective Action Members the minimum wage as required by the FLSA.

131.    The work was performed at Defendant's direction and/or with Defendant's knowledge.

132.    Defendant willfully violated the FLSA by failing to pay Plaintiff and the other Collective Action Members all the minimum wage due.

133.    Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions complied with the FLSA.

134.    As a result of the aforesaid willful violations of the FLSA's minimum wage pay provisions, Defendant has unlawfully withheld minimum wages from Plaintiff and the Collective Action Members.  Accordingly, Defendant is liable to Plaintiff and the Collective Action Members for unpaid wages including minimum wage compensation, an additional

equal amount in liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant, and pray this Court:

    a.    Certify the claim set forth in Count II above as a collective action pursuant to Section 216(b) of the FLSA and issue notice to all similarly-situated hourly employees, regardless of actual title, who worked for Defendant as Direct Support Professionals in Arizona during the last three years, informing them of their right to file consents to join the FLSA portion of this action;

    b.    Designate Plaintiff Anthony as the Representative Plaintiff of the Collective Action and undersigned counsel as the attorneys representing the Collective Action Members;

    c.    Award Plaintiff and all similarly situated employees compensatory and liquidated damages under 29 U.S.C. § 216(b);

    d.    Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law;

    e.    Award Plaintiff and all similarly situated employees attorneys' fees and costs as allowed by Section 216(b) of the FLSA, including that Defendant is financially responsible for notifying the Collective Action Members of Defendant's alleged wage and hour violations; and

    f.    Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

## COUNT III
### FED.R.CIV.P. 23 CLASS ACTION FOR VIOLATION OF THE ARIZONA MINIMUM WAGE STATUTE
**(Failure to Pay Minimum Wage, A.R.S. § 23-362 *et seq.*; Brought Against Defendant by Plaintiff Anthony Individually and on Behalf of the Arizona Class Members)**

135.    Plaintiff, on behalf of himself and the Arizona Class Members, reasserts the allegations set forth in the above paragraphs.

136.   At all material times hereto, Plaintiff and the Arizona Class Members were employed by Defendant within the State of Arizona and have been entitled to the rights, protections, and benefits provided under the Arizona Minimum Wage Statute.

137.   Plaintiff and the similarly situated employees were entitled to the minimum wage as defined by A.R.S. § 23-363.

138.   Defendant was an employer pursuant to A.R.S. § 23-362(B).

139.   Defendant is aware that, under A.R.S. § 23-363, it was obligated to pay minimum wage due to Plaintiff and the Arizona Class Members.

140.   Defendant failed to pay Plaintiff and the Arizona Class Members minimum wage due without a good faith basis for withholding wages.

141.   Defendant has willfully failed and refused to pay minimum wage due to Plaintiff and the Arizona Class Members. As a result of Defendant's unlawful acts, Plaintiff and the Arizona Class Members are entitled to the statutory remedies pursuant to A.R.S. § 23-364, including the balance of wages owed, interest thereon, an additional amount equal to twice the underpaid wages, and attorneys' fees and costs.

142.   The state law claim, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

      a.   Certify the state law claim set forth in Count III above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

      b.   Designate Plaintiff Anthony as the Class Representative of the Arizona Class Members and undersigned counsel as the attorneys representing the Arizona Class Members;

      c.   Award Plaintiff and all similarly situated employees compensatory damages and statutory damages, plus costs and attorneys' fees, and all available remedies pursuant to A.R.S. § 23-364;

d.  Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

e.  Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

**COUNT IV**
**FED.R.CIV.P. 23 CLASS ACTION FOR VIOLATION OF THE**
**ARIZONA WAGE STATUTE**
**(Failure to Timely Pay Wages Due, A.R.S. § 23-350 *et seq.*; Brought Against**
**Defendant by Plaintiff Anthony Individually and on Behalf of the**
**Arizona Class Members)**

143.  Plaintiff, on behalf of himself and the Arizona Class Members, reasserts the allegations set forth in the above paragraphs.

144.  At all material times hereto, Plaintiff and the Arizona Class Members were employed by Defendant within the State of Arizona and have been entitled to the rights, protections, and benefits provided under the Arizona Wage Statute.

145.  Defendant was aware of its obligation to pay timely wages pursuant to A.R.S. § 23-351.

146.  Defendant is aware that, under A.R.S. §§ 23-351-353, it was obligated to timely pay all wages due to Plaintiff and the Arizona Class Members, including regular wages and overtime.

147.  Defendant failed to timely pay Plaintiff and the Arizona Class Members wages he was due without a good faith basis for withholding wages.

148.  Defendant has willfully failed and refused to timely pay wages due to Plaintiff and the Arizona Class Members.  As a result of Defendant's unlawful acts, Plaintiff and the Arizona Class Members are entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

149.  The state law claim, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

- 24 -

a.   Certify the state law claim set forth in Count IV above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.   Designate Plaintiff Anthony as the Class Representative of the Arizona Class Members and undersigned counsel as the attorneys representing the Arizona Class Members;

c.   Award Plaintiff and all similarly situated employees compensatory damages and treble damages, plus costs and attorneys' fees, and all available remedies pursuant to A.R.S. § 23-350 *et seq.*;

d.   Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

e.   Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

<u>**COUNT V**</u>
**FLSA RETALIATION IN VIOLATION OF 29 U.S.C. § 15(a)(3)**
**(Brought Against Defendant by Plaintiff Anthony Individually)**

150.   Plaintiff, on behalf of himself, reasserts the allegations set forth in the above paragraphs.

151.   The Fair Labor Standards Act prohibits any person from discharging or in any other manner discriminating against any employee who complains of a violation of the Act or causes to be instituted any proceeding under or related to the Act.

152.   At all relevant times, Rise Services was an employer covered by the Fair Labor Standards Act and Plaintiff was an employee covered by the Act.

153.   Plaintiff engaged in protected activity when he complained to Defendant about its unlawful failure to pay for all hours worked, resulting minimum wage and overtime owed pursuant to the Fair Labor Standards Act, discussed Defendant's unlawful failure to pay for all hours worked, including overtime owed pursuant to the Fair Labor Standards Act, with Defendant's employees, and when he notified Defendant of its wage violations.

154.   As a direct and proximate result of Plaintiff's complaints about Defendant's unlawful overtime and minimum wage practices, Defendant took the adverse employment action of terminating Plaintiff.

155.   Defendant acted in retaliation when it terminated Plaintiff from his job because he engaged in protected activity by reporting violations of the Fair Labor Standards Act.

156.   There is a causal connection between Plaintiff engaging in the protected activity and Defendant's adverse employment action of terminating Plaintiff in that but for the Plaintiff engaging in the protected activity, Defendant would not have terminated Plaintiff's employment.

157.   Plaintiff's protected activity was a motivating factor in the decision by Defendant to terminate Plaintiff.

158.   Defendant's conduct was willful and Defendant's actions were punitive, malicious, and in direct retaliation for his complaints of FLSA violations.

159.   As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages, emotional distress, embarrassment, and other economic and non-economic losses.

160.   Defendant's conduct in taking adverse action against Plaintiff's employment was done with ill will, spite, malice, for the purpose of injuring Plaintiff and with a complete indifference of Plaintiff's rights.

161.   Defendant's conduct in taking adverse action toward Plaintiff's employment harmed Plaintiff and was malicious, oppressive or in reckless disregard of his rights. Defendant therefore should be required to respond to Plaintiff in the form of a punitive or exemplary damage award under federal law.

WHEREFORE, Plaintiff demands judgment against Defendant and prays this Court:

      a.   Order Defendant to reinstate Plaintiff's employment to a reasonably comparable employment position with comparable pay from which Defendant removed him;

b. Award Plaintiff compensatory and punitive damages, including lost wages and non-economic damages flowing from Defendant's unlawful retaliation, plus an equal amount in liquidated damages and attorneys' fees and costs;

c. Award Plaintiff prejudgment and post-judgment interest as provided by law; and

d. Award Plaintiff such other relief as this Court deems fair and equitable, including injunctive relief.

## COUNT VI
### WRONGFUL TERMINATION IN VIOLATION OF A.R.S. § 12-1501 *et seq.*
### (Brought Against Defendant by Plaintiff Anthony Individually)

162.   Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

163.   Defendant Rises Services Inc. dba Rise Inc.'s termination of Plaintiff violated the statutes and public policy set forth in or arising out of Arizona statutes, including but not limited to A.R.S. § 23-350 *et seq.*, giving rise to a cause of wrongful termination under A.R.S. § 23-1501 of the Arizona Employment Protection Act.

164.   Rise Services' termination of Plaintiff was in retaliation for Plaintiff's disclosure to Rise Services that it was violating the laws and public policy of this State by failing to timely pay employees all the wages they were due in violation of the Arizona Wage Statute, A.R.S. § 23-350 *et seq.*, and public policy of this State to timely pay employees for all hours worked.

165.   Plaintiff made his disclosures to his employer and to representatives of his employer who he reasonably believed were in supervisory and managerial position with the authority to investigate and take action to prevent further violations.

166.   Rise Services' actions in terminating Plaintiff in the above fashion are injurious to the public at large and violated public policy related to employees.

167.   As a direct and proximate result of unlawful termination of Plaintiff, Plaintiff suffered financial harm including but not limited to past and future wage and benefit losses,

economic disadvantages, mental pain, anguish, and suffering caused by the acts of Rise Services.

168.   Defendant's conduct in taking adverse action toward Plaintiff's employment harmed Plaintiff and was malicious, oppressive or in reckless disregard of his rights. Defendant therefore should be required to respond to Plaintiff in the form of a punitive or exemplary damage award.

WHEREFORE, Plaintiff demands judgment against Defendant and prays this Court:

    a.    Order Defendant to reinstate Plaintiff's employment to a reasonably comparable employment position with comparable pay from which Defendant removed him;

    b.    Award Plaintiff compensatory and punitive damages, including lost wages and non-economic damages flowing from Defendant's unlawful retaliation, plus attorneys' fees and costs;

    c.    Award Plaintiff prejudgment and post-judgment interest as provided by law; and

    d.    Award Plaintiff such other relief as this Court deems fair and equitable, including injunctive relief.

## COUNT VII
### WRONGFUL TERMINATION IN VIOLATION OF A.R.S. § 23-362 *et seq.*
### (Brought Against Defendant by Plaintiff Anthony Individually)

169.   Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

170.   At all relevant times, Rise Services was an employer under A.R.S. § 23-362 *et seq.* and Plaintiff was an employee under A.R.S. § 23-362 *et seq.* subject to the protections of the Arizona Minimum Wage Statute.

171.   Rise Services violated A.R.S. § 23-363 by failing to pay Plaintiff the minimum wage as set forth in the statute.

172.   Rise Services violated A.R.S. § 23-364(B) by terminating Plaintiff's employment with Defendant within days after reporting minimum wage violations to

management, including Plaintiff notifying management that he was going to raise the issue of unpaid wages with the Department of Labor.

173. There is a presumption of retaliation as a result of the close temporal proximity to Plaintiff's complaints relating to minimum wage and his termination.  A.R.S. § 23-364(B).

174. "Any employer who fails to pay the wages required under this article shall be required to pay the employee the balance of the wages owed, including interest thereon, and an additional amount equal to twice the underpaid wages. Any employer who retaliates against an employee or other person in violation of this article shall be required to pay the employee an amount set by the commission or a court sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars ($150) for each day that the violation continued or until legal judgment is final." A.R.S. § 23-364(G).

175. As a direct and proximate result of Rise Services' unlawful retaliation resulting from Plaintiff's complaints related to unpaid minimum wage, Plaintiff has been damaged and is entitled to recover damages sufficient to compensate him for the harm he suffered and deter future violations, but not less than one hundred fifty dollars ($150) for each day that the violation continued or until a legal judgment is final as well as Plaintiff's attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendant and prays this Court:

a. That liability be imposed on Defendant for its violations of the Arizona Minimum Wage Statute;

b. Order Defendant to reinstate Plaintiff's employment to a reasonably comparable employment position with comparable pay from which Defendant removed him;

c. That Plaintiff be awarded compensatory damages, punitive damages, and attorneys' fees and costs pursuant to A.R.S. § 23-364(G), including not less than one hundred fifty dollars ($150) for each day that the violation continued or until legal judgment is final;

1        d.    Award Plaintiff compensatory and punitive damages, including lost
2            wages and non-economic damages flowing from Defendant's unlawful
3            retaliation, plus attorneys' fees and costs;
4        e.    Award Plaintiff prejudgment and post-judgment interest as provided
5            by law; and
6        f.    Award Plaintiff such other relief as this Court deems fair and equitable,
7            including injunctive relief.

8    ## <u>**DEMAND FOR JURY TRIAL**</u>

9    Plaintiff hereby demands a jury trial on all claims with respect to which he may have
10   the right to a jury.

11   DATED:  February 18, 2022

12           YEN PILCH ROBAINA & KRESIN PLC
13           By   /s/Ty D. Frankel
14           Ty D. Frankel
        6017 N. 15th Street
15           Phoenix, Arizona 85014
        Telephone: (602) 682-6450
16           Facsimile: (602) 682-6455

17           YEN PILCH ROBAINA & KRESIN PLC
18           Patricia N. Syverson
        9655 Granite Ridge Drive, Suite 200
19           San Diego, California 92123
        Telephone: (619) 756-7748
20

21           Attorneys for Plaintiff

22

23

24

25

26

27

28