# Frankel Syverson pllc

FRANKEL SYVERSON PLLC
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (027179)
ty@frankelsyverson.com

9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (020191)
patti@frankelsyverson.com
*Attorneys for Plaintiff and the Class*

Michele Molinario, Bar #020594
Ravi V. Patel, Bar #030184
Stephanie D. Baldwin, Bar # 036897
**JONES, SKELTON & HOCHULI P.L.C.**
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1746
Fax: (602) 200-7831
mmolinario@jshfirm.com
rpatel@jshfirm.com
sbaldwin@jshfirm.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Deion Anthony, on behalf of himself and all those similarly situated, | Case No.  CV-22-00268-PHX-GMS |
| Plaintiff, | **JOINT MOTION FOR FINAL APPROVAL OF PROPOSED FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION SETTLEMENT** |
| vs. | |
| Rise Services Inc. dba Rise Inc., an Arizona corporation; and Rise Services Inc., a Utah corporation, | |
| Defendants. | |

# I.    Introduction

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Order of this Court dated June 25, 2025 (Doc. 338) preliminarily approving the Class Action Settlement Agreement, and in accordance with the provisions of the Settlement Agreement (Doc. 335-1), Plaintiff Deion Anthony, on behalf of himself and the Settlement Class Members,[1] hereby respectfully requests that the Court grant Final Approval of the Settlement Agreement to resolve the claims in this case. This motion is supported by the following Memorandum, the Declaration of Lisa Pavlik Regarding Notice and Settlement Administration, **Exhibit 1** ("Simpluris Decl.") and the record before the Court.

The facts, claims asserted by Plaintiff, and procedural history of the case are set forth in the Joint Motion for Preliminary Approval of FLSA Collective Action and Rule 23 Class Action Settlement (Doc. 335), which is hereby incorporated by reference.[2]  On June 25, 2025, the Court preliminarily approved the Class Action Settlement, approved Plaintiff as the class representative, approved Frankel Syverson PLLC as Class Counsel, approved Simpluris, Inc. as the Settlement Administrator, approved the form and content of the Class Notice, and approved the methods for contacting and locating Class Members and distributing the Class Notice.  Doc. 338.

In preliminarily approving this Settlement, the Court found that the Settlement appears to be fair, adequate, and reasonable. (Doc. 338 at ¶ 5). Nothing has occurred since preliminary approval to undermine that finding.  After the Court's ruling, 4,198 Rule 23 Class Members were mailed Notice forms by the Settlement Administrator, as well as receiving notice by email based on the available contact information for each individual. Simpluris Decl. at ¶¶ 7-12.  The deadline to file objections to the Settlement was July 25, 2025, and the deadline to opt out of the Settlement was August 1, 2025.  *See* Doc. 338 at ¶¶ 11, 12; Simpluris Decl. at ¶¶ 14, 16.  No Class Member has opted out or objected to the

---

[1] Capitalized terms have the meanings set forth in the Settlement Agreement (Doc. 335-1).
[2] Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby incorporates by reference the Joint Motion for Preliminary Approval at Doc. 335, along with the exhibits attached thereto.

Settlement Agreement, and no Class Member has requested to appear at the Final Approval Hearing. Simpluris Decl. at ¶¶ 15, 17.

## II. Terms of the Settlement

A detailed description of the Settlement Agreement is set forth in the Parties' Joint Motion for Preliminary Approval (Doc. 335 at Section III(B)-(C)). The Settlement Agreement provides for Rise to pay a total Settlement Amount of $1,000,000, of which none is subject to reversion. Further, the amount available to the Class Members will not be reduced by attorneys' fees or costs because Rise has agreed to pay for Plaintiff's Attorneys' Fee Award and Costs, in the amount of $485,000, subject to the Court's approval. *See* Plaintiff's Unopposed Motion for Attorneys' Fees and Costs, filed concurrently. In summary the Settlement provides the following:

### A. Class Members' Individual Settlement Amounts for Unpaid Wages

The Settlement provides up to $440,000 to settle the overtime and minimum wage claims of the FLSA Opt-In Plaintiffs as well as the unpaid wages, including unpaid overtime, straight time and minimum wage, hazard pay and bonuses, of the Rule 23 Class Members. For each of the Direct Support Professionals ("DSPs"), the funds have been allocated equally and fairly. With respect to the FLSA class, Anthony and each of the 182 Opt-in Plaintiffs will receive $100 to compensate them for their FLSA overtime and minimum wage claims, for a total of $18,300. The remaining $421,700 is available to be allocated among the 4,198 Rule 23 Class Members resulting in each Rule 23 Class Member that files a claim receiving $100.44 to compensate them for their damages pursuant to the AWA and AMWA. *See* Doc. 335-1, Settlement Agreement, at V(A) and Exhibit D; *See* Simpluris Decl. at ¶¶ 18-19.[3]

Each Rule 23 Class Member's estimated Individual Settlement Amount (based on

---

[3] Each of the FLSA Opt-In Plaintiffs (including Plaintiff Anthony) are also encompassed within the Rule 23 Settlement Class, and therefore they will be able to recover a total of $200.44. For ease of allocation, each of the FLSA Opt-In Plaintiffs only appears once in Exhibit D to the Settlement Agreement. The damages chart reflects both an amount for FLSA damages (if applicable) and an amount for Rule 23 damages.

the assumption of the Court granting final approval of the Settlement) was included in their individualized Rule 23 Class Notice distributed by the Settlement Administrator to each Rule 23 Class Member. (Doc. 335-1 at IV(B)). Each Rule 23 Class Member who opted into the Settlement Class by submitting a claim form will receive payment of their Individual Settlement Amounts after final approval of the overall Settlement. Each of the FLSA Opt-In Plaintiffs will be automatically included in the FLSA Settlement Class and will receive their Individual Settlement Amount automatically after final approval of the overall Settlement. Doc. 335-1 at IV(C).

**B.    Service Award**

As detailed in the Motion for Preliminary Approval (Doc. 335 at Sections III(B)(2) and VIII), the Parties agreed to a Service Award in the amount of $10,000 for Plaintiff Anthony. *See* Doc. 335-1, Settlement Agreement, at V(B). Given the success of this Settlement, Settlement Class Counsel continue to believe that such a Service Award should be approved as fair and reasonable and aligned with other amounts awarded in comparable cases. *See*, *e.g.*, *Vega v. All My Sons*, Case No. 4:20-cv-00284-RCC (D. Ariz. Jan. 17, 2024) (approving $10,000 service award for named plaintiff in FLSA and Rule 23 litigation) (D.E. 181); *Alvarez v. Direct Energy Bus. Mktg. LLC,* 2020 WL 1032800, at *1 (D. Ariz. Mar. 3, 2020) (approving, *inter alia*, $15,000 service award for named Plaintiff and $10,000 service award for Opt-In Plaintiff's "active involvement early in the case"). Further, Rise does not oppose such a service award.

**C.    Plaintiff's Individual Retaliation Claims**

To resolve Anthony's individual claims for retaliation under the FLSA and Arizona law, Rise has agreed to pay him $65,000. This amount was negotiated separate and apart from the Opt-In Plaintiffs' FLSA claims and Rule 23 Class Members' claims and the settlement of Anthony's retaliation claims will in no way reduce the amount the Opt-In Plaintiffs and Rule 23 Class Members receive. Importantly, Anthony was mindful of his obligations to the Opt-In Plaintiffs and Rule 23 Class Members throughout both the litigation and mediation process and at no time did his personal circumstances impact his

3

ability to act in the best interests of the Settlement Class Members.[4]  Thus, the settlement of Anthony's individual retaliation claim does not "contaminate" the settlement of Anthony, the FLSA Opt-In Plaintiffs' or the Rule 23 Class Members' unpaid wage claims.  *See, e.g., Fitzwater v. Cole*, 2019 WL 6270235, at *5 (S.D. Ala. Nov. 22, 2019) ("[T]he Court need not weigh in on whether [a retaliation settlement] is fair and reasonable so long as it does not contaminate the compromise of the Plaintiffs' claims for back pay and liquidated damages."); *Thompson v. Dealer Mgmt. Serv., Inc.*, 2016 WL 7644856, at *2 (M.D. Fla. Dec. 13, 2016) (citations omitted), *report and recommendation adopted*, 2017 WL 37941 (M.D. Fla. Jan. 4, 2017) (Generally, "[a] settlement of FLSA retaliation claims does not require court approval, so long as the settlement does not contaminate the settlement of an FLSA back wage claim.")[5]

## D.    Administrative Costs

Simpluris Inc., the Court-approved third-party administrator, was engaged for the purpose of distributing Notice and administering the Settlement.  *See* Doc. 335-1, Settlement Agreement, at IV(F); *see also* Simpluris Decl. at ¶¶ 2-3. Simpluris Inc. will be paid from the Residual Settlement Fund to cover such services in an amount estimated to be $31,000.  Settlement Agreement, Doc. 335-1, at V(C); Simpluris Decl. at ¶ 20.

---

[4] For purposes of settlement, there has not been a specific allocation of attorneys' fees to Anthony's individual retaliation claims.  This is especially reasonable here as it would have been overly complicated to attempt to separate out time associated with only the retaliation claim considering there was a significant overlap in how the claims were litigated.  For example, with regard to the depositions of Plaintiff Anthony and Rise management, the depositions were taken with a dual purpose and the fees incurred would be applicable to both the collective FLSA and Rule 23 class claims, as well as the individual retaliation claims.

[5] Further, in addition to releasing his FLSA and Arizona wage claims, the Parties have agreed to enter into a general release of all claims arising from his employment at Rise, as set forth in the General Release (Doc. 335-1, at VII(C)).  The General Release is supported by consideration for his individual retaliation claims as well as receiving a service award.  General Releases, like the instant one, that provide "compensation in addition to that which [he] is entitled under the FLSA, [] can be permissible."  *See, e.g., Weldon v. Backwoods Steakhouse, Inc.*, 2014 WL 4385593, at *1 (M.D. Fla. Sept. 4, 2014) (finding general release "permissible" where plaintiffs received consideration for their releases "wholly unrelated to the value of their FLSA claims, for which Plaintiffs are being fully compensated").  Anthony's General Release does not in any way impact the scope of the release of the Settlement Class Members.

4

E.    **Distribution of the Settlement Funds**

Under the terms of the Settlement Agreement, Rise must transfer to the Settlement Administrator the amount of $1,000,000 within 30 days of Final Approval from which the amounts to be distributed to the Settlement Class Members, Plaintiff's individual retaliation damages, the Service Award approved by the Court, Plaintiff's attorneys' fees and costs, and Administrative Costs will be paid. To the extent the individual aspects of the Settlement Amount are modified by the Court or that there are remaining funds after the Individual Settlement Allocations are made, any remaining funds from the Settlement Amount shall be used to pay the Settlement Administrator's Costs and then will be distributed in this order: 1) distributed *cy pres* to the National Institute for Workers' Rights in the amount of $10,000; 2) used to pay Defendants' Employer Payroll Taxes; and 3) any remaining amounts will result in an additional *cy pres* distribution to the National Institute for Workers' Rights. *See* Doc. 335-1, Settlement Agreement, VI(B).

**III.    Distribution of the Class Notice**

Pursuant to the Court's Order granting preliminary approval and the terms of the Settlement Agreement, the Settlement Administrator mailed the Class Notices to 4,198 Rule 23 Class Members by regular U.S. Mail on July 9, 2025. *See* Simpluris Decl. at ¶¶ 7, 10 and Exhibits A and B. Prior to mailing the Class Notice, the Settlement Administrator performed a National Change of Address (NCOA) search in accordance with Section IV(B) of the Settlement Agreement. *Id*. at ¶¶ 8-9. In an effort to ensure a high level of notice, the Settlement Administrator also sent the Rule 23 Class Notice by email. *Id*. at ¶ 12. The Settlement Administrator also set up a toll-free telephone number and a website (which was included in the Class Notice) for the purpose of allowing the Class Members to call Simpluris and to make inquiries regarding the Settlement. *Id*. at ¶¶ 4, 6. As of this date, Simpluris has received 24 calls from Class Members seeking information regarding the Settlement, Notice remails, contact information updates, their Unique ID/Passwords and/or assistance on how to complete a Claim Form; the number will remain in operation throughout the settlement process. *See* Simpluris Decl. at ¶¶ 4-5.

Following distribution of the Class Notices, as of August 8, 2025, the Settlement Administrator has received a total of 879 returned mailings as undeliverable and/or with no forwarding address. *See* Simpluris Decl. at ¶ 11.  In accordance with Section IV(B) of the Settlement Agreement, the Settlement Administrator conducted a skip trace for each of the Class Members whose mailed Class Notice was returned.  *Id.*[6]  After conducting related skip tracing, the Settlement Administrator sent a second mailing by regular U.S. Mail to 631 Class Members whose previously mailed notices had been returned and for whom updated address and contact information had been obtained.  *Id.*  Given those additional efforts, only 248 Class Members' notice packets remain having been undeliverable.  *Id*. The 248 undeliverable mail notices represent 6% of the distributed Class Notices, which is a low rate considering the length of the class period, the transient nature of caregiving service employees, and the brief employment dates for many of the Settlement Class Members. S*ee, e.g., Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 52 (W.D.N.Y. 2018) (adequate notice provided where 23 of 270 or 8.5% of notices were undeliverable); *see also Vega v. All My Sons*, Case No. 4:20-cv-00284-RCC (D. Ariz. Jan. 17, 2024) (approving $10,000 service award for named plaintiff in FLSA and Rule 23 litigation where 43 of the 430 or 10% of the notices were undeliverable) (Docs. 177-2 and 181).

Further, to the extent current information was available, the Class Members also received notice via email.  *See* Simpluris Decl. at ¶ 12.  Based on a review of the records, there are only 12 Class Members who did not receive any form of notice – mailed or email – which represents less than 0.3% of the Rule 23 Class.  This is a very low rate and emphasizes the success of the notice plan.

[6] The skip traces employed by the Settlement Administrator have been widely accepted as a "reasonable search" that "satisfies due process." *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *11 (N.D. Cal. Mar. 28, 2019); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015) (approving system of mailing settlement notices to last-known addresses and using skip traces to re-send undeliverable mail as "reasonably calculated to provide notice to class members").

**IV.    The Settlement Agreement is Fair, Reasonable, and Adequate**

"Because '[t]he Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval [,]' … district courts in this Circuit typically apply the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982)." *Garcia v. Cty. of Los Angeles*, 2018 WL 3218212, at *2 (C.D. Cal. May 21, 2018) (quoting *Otey v. CrowdFlower, Inc.*, 2015 WL 6091741, *4 (N.D. Cal. 2015)). *See also Villarreal v. Caremark LLC*, 2016 WL 5938705, at *2 (D. Ariz. May 10, 2016) ("Like 'numerous district courts throughout the Ninth Circuit,' this Court, too, is guided by *Lynn's Foods* in deciding whether to approve the parties' Stipulation.") (citing cases). "In 'scrutinizing' a FLSA settlement 'for fairness [,]' a court must decide whether a stipulated settlement agreement 'is a fair and reasonable resolution of a bona fide dispute of FLSA provisions.'" *Villarreal*, 2016 WL 5938705, at *2 (quoting *Lynn's Foods*, 679 F.2d at 1353). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues ... that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

Because of the inherent differences between class actions and individual FLSA settlements, some of the Rule 23 "fairness" factors do not apply to FLSA collective action settlements. *Villalobos v. Calandri*, 2016 WL 6901695 at *4 (C.D. Cal. March 14, 2016). However, in cases that present a hybrid settlement under both the FLSA and Rule 23, courts look to both the FLSA and Rule 23 factors to evaluate the overall fairness and reasonableness of a hybrid settlement. *Id.* at *4. "These factors include (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement." *Id.* (citing *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)); *see also Churchill Vill., L.L.C. v.*

*Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (setting forth factors).  Further, at final approval, the Courts also evaluate the following Rule 23(e)(2) factors: whether "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the proposal treats class members equitably relative to each other"; and "the relief provided for the class is adequate." *Salazar v. Driver Provider Phoenix LLC*, 2024 WL 2923718, at *2 (D. Ariz. June 10, 2024).  As this case involves both FLSA and Rule 23 classes, application of these factors is appropriate. As set forth below, all the relevant factors favor final approval of the Settlement in this case.

With regard to the eight *Churchill* factors set forth above, the Parties addressed each of these factors in detail in their Joint Motion for Preliminary Approval (Doc. 335 at VII), which the Parties incorporate herein. Since the Court's June 25, 2025 Order (Doc. 338) preliminarily approving the Settlement, however, additional facts support factors (4) (the amount offered in Settlement) and (8) (the reaction of Class Members).

As to the amount offered in Settlement, the Court may now more accurately determine the amount of recovery to be claimed by the Class as a result of this Settlement. *See Harris v. Vector Marketing Corp*., 2011 WL 1627973 at *13-14 (N.D. Cal. April 29, 2011) (recognizing that the actual value of the settlement can be more accurately assessed at a final fairness hearing after submission of claims). As set forth above, Anthony and each of the 182 FLSA Opt-In Plaintiffs will be automatically sent the Individual FLSA Settlement Amount – which equates to an aggregate amount of $18,300 – without the requirement of submitting a claim form.  Further, no Rule 23 Class Members requested to opt out of the class or objected to the Settlement.  As a result, the total $421,647.12 will be available for payment to Anthony and the Rule 23 Class Members for their alleged unpaid wage compensation claims pursuant to the AWA and AMWA.  And, no individual Class Member will have their agreed-upon recovery set forth in Exhibit D to the Settlement Agreement reduced in any way, including by way of attorneys' fees or costs because Rise has agreed to pay for Plaintiff's Attorneys' Fee Award and Costs in an amount of $485,000, to be approved by the Court.  This is an excellent result for Class Members, and the fact that

8

1    no amount will revert to Rise but any unclaimed funds will be used to pay the

2    Administrator's Costs, be distributed *cy pres* to the National Institute for Workers' Rights

3    and go to pay associated employer payroll taxes is significant and weighs in favor of final

4    approval of the class action settlement and supports finding the Settlement Agreement to be

5    fair, reasonable, and adequate.

6         With respect to the reaction of Class Members to the proposed Settlement following

7    Preliminary Approval and distribution of Class Notice, as set forth above, no Class Member

8    has opted out or objected to the Settlement Agreement. Simpluris Decl. at ¶¶ 14-17.  This

9    too supports granting final approval.  *See Reid v. I.C. Sys. Inc.,* 2018 WL 11352039, at *3

10   (D. Ariz. July 27, 2018), *aff'd*, 795 F. App'x 509 (9th Cir. 2019) ("The lack of objections

11   and minimal number of class members who opted-out strongly weighs in favor of the

12   settlement being fair, reasonable, and adequate."); *Cruz v. Sky Chefs, Inc.*, 2014 WL

13   7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class

14   action settlement is fair, adequate, and reasonable when few class members object to it.").

15   Further, as part of this Settlement, Defendants' Counsel provided CAFA Notice to the

16   Attorney Generals in 46 states.  Doc. 335-1, at IV(G).  That not a single state attorney

17   general objected to the Settlement also is "powerful indicia that the Settlement is fair,

18   reasonable, and adequate and deserves final approval."  *See Braynen v. Nationstar*

19   *Mortgage, LLC,* 2015 WL 6872519, *7 (S.D. Fla. Nov. 9, 2015).

20        Further, at final approval, "provided that notice is adequate, the relief made available

21   to class members is fair, and the settlement is otherwise fair and reasonable, the number of

22   claims submitted at any particular time is not a relevant factor in evaluating the fairness,

23   reasonableness, or adequacy of the settlement."  *Hall v. Bank of Am., N.A.*, 2014 WL

24   7184039, at *8 (S.D. Fla. Dec. 17, 2014) (citing *Hamilton v. SunTrust Mortg. Inc.*, 2014

25   WL 1285859 (S.D. Fla. Mar. 25, 2014) ("a low claims rate at this stage does not compel the

26   conclusion that the settlement is not 'fair, reasonable, or adequate.' ... [because] ... [t]he

27   question for the Court at the Final Fairness Hearing stage is whether the settlement provided

28   to the class is "fair, reasonable, and adequate," not whether the class decides to actually take

1   advantage of the opportunity provided."); *Perez v. Asurion Corp.*, 501 F.Supp.2d at 1377
2   (approval of settlement with 1.1% of class members returned claims forms); *Moore v.*
3   *Verizon Commc'n Inc.*, 2013 WL 4610764, at *8 (N.D.Cal. Aug.28, 2013) (granting final
4   approval of class action settlement with 3% claims rate).   To date, 83 Rule 23 Class
5   Members have submitted valid claim forms, however, this amount is expected to increase
6   as the claims period does not end until August 23, 2025.  *See* Simpluris Decl. at ¶ 18.
7   However, that 83 Class Members have submitted claims forms – and ***none*** have requested
8   to be excluded or objected to the settlement – supports that the Settlement does provide
9   benefit to the Class Members.  "[M]any factors affect response rates and this ratio should
10  not be given great significance." *Date v. Sony Elecs., Inc.*, 2013 WL 3945981, at *10
11  (E.D.Mich. July 31, 2013). "There may be many reasons or no reasons why class members
12  decide to participate in a settlement…Those decisions, however, do not affect whether the
13  settlement provided to the Class is fair, adequate, and reasonable.  *Hall,* 2014 WL 7184039,
14  at *8.

15        The final consideration for final approval is whether the settlement is the product of
16  collusion. *See Reid,* 2018 WL 11352039, at *3. "The Ninth Circuit puts 'a good deal of
17  stock in the product of arms-length, non-collusive, negotiate resolution ...'" *Ellison v. Steve*
18  *Madden, Ltd.*, 2013 WL 12124432, at *7 (C.D. Cal. May 7, 2013) (citing *Rodriguez v. W.*
19  *Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).  "Factors indicative of collusion include
20  '(1) when counsel receives a disproportionate distribution of the settlement, or when the
21  class receives no monetary distribution but class counsel are amply rewarded; (2) when the
22  parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees
23  separate and apart from class funds; ... and (3) when the parties arrange for fees not awarded
24  to revert to defendants rather than be added to the class fund.'" *Id.* (citing *In re Bluetooth*
25  *Headset Prods. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011)).  Here, this settlement was
26  the product of non-collusive, arms-length negotiations conducted before professional
27  meditator, J. Burr Shields, over two days, followed by months of the parties continuing to
28  confer to resolve all the remaining issues.  *See* Doc. 335-1, at I(G).  Further, the fee

1   distribution does not suggest the settlement agreement was collusive.  This is not a situation

2   where class members receive nothing while Class Counsel receives a large payout.  In fact,

3   as explained in Plaintiff's concurrently filed Fee Motion, the amount of fees Class Counsel

4   is requesting represents only 65% of their actual lodestar.  Although the Settlement does

5   provide a "clear sailing" provision in that Rise agrees not to oppose Plaintiff's motion for

6   attorneys' fees (Doc. 335-1, at V(D)), the fees requested are reasonable and warranted in

7   light of the benefits provided by the Settlement.  And, importantly, no part of the Settlement

8   if unclaimed or not approved by the Court will revert to Rise.  Thus, the Settlement is not

9   the product of collusion and should be approved as fair, reasonable, and adequate.

10  **V.    Conclusion**

11          For the foregoing reasons, and for the reasons set forth in the Joint Motion for

12  Preliminary Approval (Doc. 335), and the supporting Declaration, Plaintiff respectfully

13  requests that the Court enter the proposed Final Approval Order originally submitted as

14  Exhibit F (Doc. 335-1 at 152-158) with Plaintiff's Joint Motion for Preliminary Approval

15  and submitted again here with this motion for the Court's convenience.[7]

16  DATED:  August 8, 2025.      **FRANKEL SYVERSON PLLC**
                                 By    *s/ Patricia N. Syverson*
17                               Patricia N. Syverson
                                 9655 Granite Ridge Drive, Suite 200
18                               San Diego, California 92123

19                               **FRANKEL SYVERSON PLLC**
                                 Ty D. Frankel
20                               2375 E. Camelback Road, Suite 600
                                 Phoenix, Arizona 85016
21                               *Attorneys for Plaintiff and the Class*

22                               **JONES, SKELTON & HOCHULI P.L.C.**
                                 By    *s/Ravi V. Patel (w/ permission)*
23                               Michele Molinario
                                 Ravi V. Patel
24                               Stephanie D. Baldwin
                                 40 N. Central Avenue, Suite 2700
25                               Phoenix, Arizona 85004
                                 *Attorneys for Defendants*
26

27  [7] The Proposed Order submitted with this instant motion has been updated from the
28  proposed order submitted with the Settlement Agreement to reflect the date the Court
    preliminarily approved the Settlement.